Mrs. Sarah D. Groner prayed for judgment against the Capitol Syrup Company, alleged to be a commercial partnership, and Leon Siegel, a member of the partnership, for $2,000, with interest, etc., alleging herself to be the holder of "a notation of indebtedness" made by the said partnership for that amount. She alleged that the said notation of indebtedness, also referred to as a note, had matured and that it remained unpaid in spite of amicable demand, and she prayed that a writ of attachment issue and that under it the Civil Sheriff for the Parish of Orleans be commanded to seize property of defendants sufficient to satisfy her claim, alleging that "defendants are about to leave the State of Louisiana permanently, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing judgment against him previous to his departure; that defendants have further mortgaged, assigned and disposed of, or are about to mortgage, assign, or dispose of, their property or some part thereof with intent to give unfair preference to some creditors; that they have converted or are about to convert their property with intent to place it beyond the reach of their creditors; * * *".
Plaintiff also alleged that the necessary supporting affidavit was attached. The required *Page 271 
bond was filed, and the writ of attachment issued accordingly.
Thereupon the partnership, acting through Siegel, and Siegel, himself, in a motion for a rule nisi, alleged that the allegations on which the writ of attachment had issued were untrue and called upon plaintiff to show cause why the writ should not be dissolved, and why plaintiff should not be condemned to pay attorney's fees in the sum of $500. After a hearing this rule was dismissed and defendants, plaintiffs in rule, have appealed.
Of course, if either of the allegations of the petition, that is to say the charge that defendants intended to leave the state permanently, or that they had mortgaged or were about to mortgage their property, with intent to defraud, is true, then the writ properly issued and the District Judge was correct in not dissolving it, for Article 240 of our Code of Practice provides that:
"A creditor may obtain such attachment * * * in the following cases:
"1. When such debtor is about leaving permanently the State * * *.
"2. * * *
"3. * * *
"4. When he has mortgaged, assigned or disposed of, or is about to mortgage, assign or dispose of his property, rights or credits, or some part thereof with intent to defraud his creditors or give an unfair preference to some of them.
"5. * * *"
There are other grounds set forth in the article of the Code but we are concerned with only those which we have quoted.
The charge that Siegel is about to leave the state permanently may be disposed of in a very few words. There is nothing in the record which, to any extent at all, indicates that he had or has any such intention. On this point the only evidence is the testimony of Siegel, himself, and he says that he had no intention of leaving.
When we come to consider the other charge, we find that the record shows that plaintiff is a creditor holding a liquidated claim and that she has not been paid, and that the partnership has other debts. Siegel says that it is indebted to his brother, Fred Siegel, for money loaned without security and that it is also indebted to two branches of a local bank, for which latter loans his mother-in-law, Mrs. David Kohlman, has either endorsed or otherwise become guarantor.
The partnership owns a motor truck and also has a stock of molasses or syrups. On a certain Monday night, plaintiff's attorney called upon Siegel for payment. At that time Siegel told him that neither the motor truck nor the stock of syrup and molasses had been mortgaged. On the next day — Tuesday — a mortgage on the truck was executed and on the second day — Wednesday — the stock in trade was also mortgaged, and by these mortgages both Fred Siegel and Mrs. Kohlman were secured.
In addition to this, it appears that just at that time, plaintiff discovered that at 6:30 o'clock in the evening, some of the syrup was being removed from the place of business of defendant partnership to the automobile of Fred Siegel, and that this syrup was in containers bearing the name of the Capitol Syrup Company and also the name of Fred Siegel.
On behalf of the seizing creditor it is contended that these various acts evidenced an intention on the part of Leon Siegel to give an unfair preference to his brother, Fred Siegel, and to his mother-in-law, Mrs. Kohlman. Siegel, on the other hand, maintains that the mere granting of mortgages on the property of the partnership did not evidence a fraudulent intent, nor indicate a desire to grant unfair preferences, and that no significance should be attached to the removal of the syrup by Fred Siegel since that syrup had been sold in the regular course of business to the Louisiana State University, and was merely being transported by defendant's brother to the said purchaser.
It is conceded by plaintiff, as it must be, that the mere granting of a mortgage to one creditor does not in itself evidence an improper intention to grant a preference. This has been held in many cases, notably G. Seeligson Co. v. A. Rigmaiden Co., 37 La.Ann. 722; Merchants' Farmers' Bank v. R.N. McKellar, 44 La.Ann. 940, 11 So. 592; Abney, Love Co. v. Mrs. S.H. Whitted, 28 La.Ann. 818; Ferguson v. Chastant, 35 La.Ann. 339; Herrmann Vignes v. Justin L. Amedee, 30 La.Ann. 393; Fidelity Deposit Company of Maryland v. Johnston,117 La. 880, 42 So. 357; and Douglas Public Service Corp. v. Leon,196 La. 735, 200 So. 21, 22.
It is also true that the sale in the regular course of business of a part of a *Page 272 
stock in trade cannot be pointed to as evidence of an intention to defraud or to give an unfair preference. But though the mere granting of a mortgage does not of itself evidence an intention to prefer the mortgage creditor, it is a circumstance which, with others, may indicate such an intention. All of the surrounding circumstances must be considered since, as the Supreme Court said in Douglas Public Service Corporation v. Leon, supra, "the acts and declarations of the debtor, as well as the surrounding circumstances, may be shown, since intent, which is subjective, can only be proved by objective signs. * * *"
Here we find not one mortgage but two, both granted in favor of relatives, and we find them both hurriedly executed immediately upon the manifestation by the unfavored creditor of a determination to seek an enforcement of her rights, and we find also the removal, after the usual business hours, of a part of the stock in trade of debtor, and we notice, too, that the stock which is being so removed is marked with the name of one of the preferred creditors and is being turned over to that creditor.
Any one of those acts might not in itself evidence the intention which is essential, but all of them together seem to us to justify the conclusion reached by the District Judge that the seizing creditor, had no attachment issued, would have found herself — may we use the slang but very appropriate expression, "holding the bag." Whether there is an intent to defraud and to grant an unfair preference is a question of fact which a trial court is better able to determine than is an appellate court, and it is a question on which there should be no reversal unless there is manifest error. There is no such manifest error here.
The judgment appealed from is affirmed.
Affirmed. *Page 386